```
               UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW HAMPSHIRE
```

John W. Gebo

   v.                                     Civil No. 11-cv-047-JD

Robert Thyng


## REPORT AND RECOMMENDATION

John Gebo, a prisoner proceeding pro se, has filed this civil rights action (doc. no. 1), pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth and Fourteenth Amendment rights. The matter is before me for preliminary review to determine, among other things, whether the complaint states any claim upon which relief might be granted. See 28 U.S.C. § 1915A(a); United States District Court for the District of New Hampshire Local Rule ("LR") 4.3(d)(2).

### Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff or petitioner commences an action pro se, the magistrate judge conducts a preliminary review. The magistrate judge may issue a report and recommendation after the initial review, recommending that claims be dismissed if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be

granted, the allegation of poverty is untrue, or the action is frivolous or malicious. See id. (citing 28 U.S.C. § 1915A & Fed. R. Civ. P. 12(b)(1)). In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to construe pleadings liberally in favor of pro se party); Castro v. United States, 540 U.S. 375, 381 (2003).

To determine if the complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6). The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks and alterations omitted). A claim consisting of little more than "allegations

that merely parrot the elements of the cause of action" may be dismissed.  Id.  The second part of the test requires the court to credit as true all non-conclusory factual allegations and the reasonable inferences drawn from those allegations, and then to determine if the claim is plausible.  Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007).  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555-56 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." (citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 129 S. Ct. at 1950 (citation omitted).  In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits."  Ocasio-Hernández, 640 F.3d at 13.  "The relevant inquiry focuses

on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id. Applying this standard, the court finds the following facts have been alleged in the complaint (doc. no. 1).

## Background

On September 2, 2009, John Gebo, an inmate at the New Hampshire State Prison ("NHSP") was assaulted by another inmate whom Gebo describes as a "known gang member." It appears that, after the first assault, Gebo was given a "pending administrative review" ("PAR") status and housed in the prison's Health Services Center.

The next day, Gebo notified Unit Manager Robert Thyng that he needed to be housed in protective custody because he had been assaulted by a known gang member. Thyng denied Gebo's request, removed him from PAR status, and returned Gebo to general population housing. Gebo claims that the prison's administrative regulations for classification procedures required Thyng to obtain the approval of the NHSP Classifications Department prior to removing Gebo from PAR status and returning him to general population.

On September 5, 2009, while in general population, Gebo was again assaulted by a "known gang member"[1] who threw boiling water on him. Gebo charges that the second assault was the direct result of Thyng's returning Gebo to general population after the first assault.

## The Claims

Gebo raises the following claims in his complaint (doc. no. 1)[2]:

1. Gebo's Eighth Amendment right not to be subjected to cruel and unusual punishment was violated when Thyng failed to protect him from being assaulted by refusing to house him in protective custody, and housing him instead in general population, despite knowing that Gebo was in danger of assault in general population.

2. Gebo's Fourteenth Amendment due process rights were violated when Thyng failed to follow proper classification procedures by removing Gebo from PAR status, and returning him to general population, after Gebo reported that he was in danger

---

[1] The complaint is unclear as to whether the same individual "gang member" assaulted Gebo on both September 2, 2009, and September 5, 2009.

[2] The claims, as identified here, will be considered to be the claims raised by Gebo in his complaint for all purposes. If Gebo disagrees with this identification of the claims, he must properly object to this report and recommendation or move to amend the complaint.

in general population, without first obtaining the approval of the Classifications Department.

## Discussion

I.  <u>42 U.S.C. § 1983</u>

A government official may be held personally liable under 42 U.S.C. § 1983 if, acting under color of state law, the official caused the deprivation of a federal constitutional or statutory right.[3]  See <u>Haywood v. Drown</u>, ___ U.S. ___, ___, 129 S. Ct. 2108, 2111 (2009); <u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 40-41 (1st Cir. 2009).  Because Thyng, a state prison employee, was a person acting under color of state law when he is alleged to have violated Gebo's constitutional rights, Gebo's claims arise under § 1983.

---

[3] 42 U.S.C. § 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

6

## II. Failure to Protect

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Mosher v. Nelson, 589 F.3d 488, 493 (1st Cir. 2009) (quoting Farmer v. Brennan, 511 U.S. 825, 828 (1994)). Prison officials' duty to protect prisoners encompasses a duty to protect prisoners from violence at the hands of other inmates. See Mosher, 589 F.3d at 493 (citing Calderón-Ortiz v. LaBoy-Alvarado, 300 F.3d 60, 63-64 (1st Cir. 2002) ("An inmate may sue a correctional facility under the Eighth Amendment for failure to afford adequate protection . . . from attack by other inmates.")).

In order to state a claim against a prison official for failing to protect him, Gebo must assert, first, that he has been "incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. Second, Gebo must assert facts to demonstrate that the responsible prison official acted with deliberate indifference. See Mosher, 589 F.3d at 494. "Deliberate indifference" on the part of a prison official may be shown only where: "(1) the defendant knew of (2) a substantial risk (3) of serious harm and (4) disregarded that risk." Calderon-Ortiz, 300 F.3d at 64 (citing Farmer, 511 U.S. at 837-40). The deliberate indifference standard "requires

'something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result' but 'something more than mere negligence.'" Mosher, 589 F.3d at 494 (quoting Farmer, 511 U.S. at 835).

Prison officials are obliged by the Eighth Amendment to "take reasonable measures to guarantee inmates' safety from attacks by other inmates." Calderón-Ortiz, 300 F.3d at 63-64 (citing Farmer, 511 U.S. at 832-33 and Ayala Serrano v. Lebron Gonzalez, 909 F.2d 8, 14 (1st Cir. 1990)). An allegation of deliberate indifference may be defeated where officials responded reasonably to a known risk of harm. See Mosher, 589 F.3d at 494 (citing Burrell v. Hampshire Cnty., 307 F.3d 1, 8 (1st Cir. 2002)).

The First Circuit has allowed a claim of deliberate indifference to the risk of inmate-on-inmate violence to stand where "jail officials inexplicably introduced a person posing a known danger, another inmate who had repeatedly threatened [plaintiff], into the holding cell where [plaintiff] was being kept" when the officials were aware that the plaintiff would be identified as an informant and would therefore be at risk of harm as a result of the placement. Mosher, 589 F.3d at 494 (quoting Burrell, 307 F.3d at 7). "A prisoner . . . need not wait to be assaulted to obtain relief." Purvis v. Ponte, 929

8

F.2d 822, 825 (1st Cir. 1991).  Inmates do not have to identify a specific threat to be entitled, under the constitution, to protection from inmate violence; a claim for deliberate indifference can be maintained where an inmate alleges that a prison official had knowledge of facts from which an inference could be drawn that a substantial risk of serious harm existed, and failed to reasonably respond to that risk.  See Calderón-Ortiz, 300 F.3d at 63 (deliberate indifference could be shown when officials who knew that dangerous inmates and vulnerable inmates were housed together, and knew that officials were not making regular patrols of the housing area, resulted in protracted assault on vulnerable inmate).

    Here, Gebo alleges that after one assault by a known gang member, he notified Thyng that he was at risk of harm if he remained in general population based on the "gang member" status of Gebo's assailant.  It is reasonable for the court to infer that if Gebo was assaulted by a known gang member, he could very well be at substantial risk of future violence if he were placed in a housing situation with that individual or other members of that gang, particularly after he reported the first assault to prison staff.  See Ocasio-Hernández, 640 F.3d at 12 (court conducting preliminary review may draw reasonable inferences from plaintiff's non-conclusory factual allegations).  It is

9

also reasonable to infer that Thyng, an experienced corrections official, would be aware of that risk.

Gebo has demonstrated that his placement in general population after the first assault put him at risk of serious harm; a risk borne out by the fact that boiling water was thrown on Gebo by a known gang member two days after he was returned to general population.  Gebo has thus alleged sufficient facts to satisfy the first prong of a failure to protect claim.

As to the second prong, regarding Thyng's mental state, Gebo asserts that Thyng knew of the risk of harm to Gebo in general population, as Gebo specifically told him that general population placement would subject him to such a risk, and because Gebo's assailant was a known gang member.  Thyng, with that knowledge, which was supported by the fact of the prior assault on Gebo, disregarded the risk to Gebo and placed him in harm's way by housing him in general population with other gang members.

Gebo has stated sufficient facts in his complaint therefore to demonstrate that Thyng acted with deliberate indifference to a serious risk to Gebo's safety.  Gebo may therefore assert an Eighth Amendment violation against Thyng for failing to protect him.  In an order issued simultaneously with this report and

recommendation, the court will direct service of this claim on Thyng.

III. Due Process

Once Gebo reported a need for protection, he was placed in PAR status, presumably pending review of his request to be placed in protective custody. See N.H. Admin. Code Cor ("COR") 404.01(d) and (e) (requiring prison staff to place inmate in PAR status upon report of need for protective custody pending protective custody review). Gebo alleges that prison regulations direct prison personnel to undertake a particular process to evaluate an inmate's need for protective custody once an inmate reports a specific and rational threat to his safety. See N.H. Code Cor ("COR") 404.01, et seq.[4] Gebo now claims that once he requested protective custody status, the prison's administrative regulations granted him a liberty interest in remaining in PAR status until the classification department

---

[4] State administrative regulations spell out a procedure to be followed once an inmate notifies a prison staff member of a rational fear for his safety. See generally COR 404.01. This procedure provides that inmates reporting a specific threat to their safety may seek protective custody and, in that instance, will be immediately placed in PAR status and be retained there until such time as appropriate prison personnel can determine what level of security is required to reasonably assure the inmate's safety. See COR 404.01(b), (d)-(p); 404.04(h) (providing that a classification board will determine whether a threat exists to an inmate placed in PAR status, and requiring that the inmate remain in secure housing until the administrative process is completed).

11

completed its evaluation of Gebo's circumstances and determined whether the asserted risk to Gebo's safety in general population warranted placement in protective custody status.

An inmate has no constitutionally protected liberty interest in being housed in a particular facility or classified in a particular security status. See Wilkinson v. Austin, 545 U.S. 209, 221-22 (2005) (citing Meachum v. Fano, 427 U.S. 215, 225 (1976) (prison officials have discretion to transfer inmate "for whatever reason or for no reason at all")); Meachum, 427 U.S. at 228 (expectation that a certain housing status will continue is too ephemeral to trigger procedural due process protections). Although the constitution does not provide for a liberty interest in a particular classification, state statutes or regulations can create such an interest. See Sandin v. Conner, 515 U.S. 472, 483-84 (1995) ("States may under certain circumstances create liberty interests which are protected by the due process clause"); Roy v. Stanley, 110 F. App'x 139, *2 (1st Cir. 2004). Liberty interests created by prison regulations, however, "will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical

and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Gebo claims that the prison was required to afford him the process delineated in the prison's administrative regulations. Where the mandatory language of the regulations seem to require adherence to the process described therein, the Supreme Court, in Sandin, "abrogated the methodology of parsing the language of particular regulations" to determine if they affirmatively create rights. Wilkinson, 545 U.S. at 222; see Tyree v. Weld, Civ. Nos. 93cv12260-NG, 93cv12725-NG, 2010 WL 145882, *7 (D. Mass. Jan. 11, 2010) ("Sandin shifted the focus of a court's inquiry from the language of state regulations to the magnitude and nature of the loss suffered by the prisoner") (citing Sandin, 515 U.S. at 480-84). The court in Tyree reasoned: "Permitting claims based on apparently mandatory language in state statutes or regulations extended prisoners' rights too broadly to allow for the flexible maintenance of prisons and the states' broad discretion in administering them." 2010 WL 145882 at *6. The court finds the reasoning of Tyree persuasive and applies it here. Accordingly, the court finds that the regulations at issue in this case did not create any liberty interest in Gebo's remaining in PAR until the protective custody review process was completed.

Moreover, even if a liberty interest could arise out of the mandatory language of prison regulations, Gebo's claim depends on the proposition that removing him from PAR status prior to the culmination of the administrative process created an "atypical and significant hardship in relation to the ordinary incidents of prison life" sufficient to satisfy the standard for establishing a liberty interest set forth in Sandin. Relevant case law does not support that proposition. See Dejesus v. Edgar, 142 F.3d 439, *1 (7th Cir.) (Table), cert. denied, 525 U.S. 970 (1998) (inmate placed in protective custody due to identifiable risk of harm from known gang members on his housing unit had no protected liberty interest in remaining in protective custody); Howard v. Collins, 129 F.3d 121, *1 (8th Cir. 1997) (Table) (no liberty interest in remaining in protective custody); Mendez v. Kemp, Civ. Action No. 08-244-JJF, 2008 WL 4937590, *3 (D. Del. Nov. 18, 2008) (claim challenging prison's attempt to move prisoner out of protective custody not actionable as prisoner has no due process right to incarceration in particular institution); Catrabone v. Farley, No. 3:94-CV-367 RM, 1995 WL 646281, *2 (N.D. Ind. Oct. 10, 1995) (no protected liberty interest in remaining in protective custody).

Gebo has not otherwise alleged facts to demonstrate that his transfer from PAR to general population resulted in his

14

subjection to conditions that either exceeded the confines of his sentence or themselves created a hardship sufficient to give rise to a liberty interest. Gebo's assertion that returning him to general population subjected him to dangerous conditions and that he suffered injury as a result of that danger coming to fruition amount only to a restatement of his Eighth Amendment "failure to protect" claim; Gebo has not described conditions that give rise to an independent liberty interest in PAR status or an entitlement to any particular process.

Because Gebo did not possess a protected liberty interest in continued placement in PAR status, he was not entitled to any process prior to being removed from that status. See Wilkinson, 545 U.S. at 221. Accordingly, Gebo's Fourteenth Amendment claim should be dismissed.

## Conclusion

For the foregoing reasons, the court recommends that Gebo's Fourteenth Amendment due process claim be dismissed. In an order issued simultaneously with this report and recommendation, the court will direct service of Gebo's Eighth Amendment claim on defendant Thyng.

Any objections to this Report and Recommendation must be filed by September 15, 2011.[5]  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010); United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008).

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  August 2, 2011

cc:  John W. Gebo, pro se

LBM:jba

---

[5]In an order issued this date on Gebo's motion for appointment of counsel, the ordinary fourteen day period during which an objection to a report and recommendation can be filed has been extended to September 15, 2011 to allow sufficient time for the clerk to determine whether available and willing counsel can be secured to represent Gebo in this matter.  See Fed. R. Civ. P. 72(b)(2).