```
              UNITED STATES DISTRICT COURT FOR THE
                    DISTRICT OF NEW HAMPSHIRE
```

John W. Gebo

    v.                              Civil No. 11-cv-047-JD
                                            Opinion No. 2012 DNH 059

Robert Thyng


                             O R D E R

    John W. Gebo, an inmate in the New Hampshire State Prison system, brings an action pursuant to 42 U.S.C. § 1983 against Unit Manager Robert Thyng, alleging violation of his Eighth Amendment rights for failing to protect him from assault by other inmates.  Thyng moves for summary judgment on the ground that Gebo failed to exhaust his administrative remedies.  Gebo objects.  Thyng filed a motion to strike parts of an affidavit submitted by Gebo in support of his objection, and Gebo also objects to that motion.


I.   Motion to Strike

    Thyng moves to strike certain statements in an affidavit by David Peters that Gebo submitted in support of his objection to summary judgment.  Thyng contends that the affidavit includes statements that cannot be considered for purposes of summary

judgment because they are not based on Peters's personal knowledge and are hearsay. The challenged statements pertain to the contents of a request slip and to what Gebo told Peters during a conversation.

Statements in affidavits "are effective in opposing summary judgment only when they are given on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify about the matter in question." Hannon v. Beard, 645 F.3d 45, 49 (1st Cir. 2011); see also Fed. R. Civ. P. 56(c)(4). Hearsay is an out-of-court statement offered for its truth. Fed. R. Evid. 801. Statements that would otherwise be inadmissible hearsay may be admissible if they are covered by an exception to the hearsay bar. Fed. R. Evid. 802. Those exceptions include certain statements that are not hearsay as defined by Rule 801(d), and statements that fall within the exceptions provided by Rules 803 and 804.

Peters's statements in his affidavit about his conversation with Gebo in September of 2009 may be considered to show that Peters and Gebo met and talked at that time and that they talked about Gebo having been assaulted and his concern for his safety. Gebo showed Peters the request slip, and Peters saw Gebo put the slip in the appropriate box. Because Peters does not say that he read the request slip, Peters's statements about his

understanding of what the request slip said are hearsay and will not be considered. Similarly, Peters's statement that he believed the upstairs unit at the prison was easily accessible to those in the downstairs unit will not be considered for purposes of summary judgment.

II. Motion for Summary Judgment

The record presented by the parties for and opposing summary judgment, as limited by the result above, is considered under the applicable standard.

A. Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Material facts are "facts that might affect the outcome of the suit under the governing law." Id. at 248. The court considers the undisputed material facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011).

B.  <u>Background</u>

During the events at issue in this case, Gebo was an inmate at the Northern New Hampshire Correctional Facility. On September 2, 2009, Gebo was housed in the general prison population when he was attacked by other inmates. Gebo knew that at least two of the attackers were members of prison gangs, and he believed he was attacked because he refused to join either gang. He was treated at Androscoggin Valley Hospital for injuries he sustained in the attack.

On his return to the prison, Gebo was given Administrative Review status. Initially he was housed in the Health Services Center at the prison. The next day, September 3, Gebo told Unit Manager Robert Thyng that he needed to be placed in protective custody because he had been assaulted by a known gang member. Thyng denied his request and returned Gebo to general population.

Gebo states in his affidavit that he then filed a request slip in which he asked to speak with Thyng and asked for an explanation of why his request for protective custody was denied. Peters states in his affidavit that he talked with Gebo in early September of 2009 about the assault and Gebo's concern for his safety and that he saw Gebo put a request slip into the request slip box outside the sergeant's office. Gebo got no response

4

from the request slip, and he remained in general population in the prison.[1]

On September 5, 2009, Gebo was assaulted again. Other inmates threw boiling water on him and hit him with a lock. Gebo was treated for burns, lacerations, and bruising at Androscoggin Valley Hospital. Again, he was placed on Administrative Review status, pending an investigation and protective custody issues. Despite the pending investigation and the assaults, Gebo was returned to general population housing. It is not apparent from the record currently before the court why, after two assaults by inmates within three days, when both incidents required Gebo to receive medical treatment, prison officials returned Gebo to the general population, albeit in a different cell block.

Gebo states in his affidavit that he submitted another request slip to Thyng, asking for a meeting about the assaults and his need for protective custody but did not receive a response. A few days later, Gebo spoke to another prison officer, whom he believes was Sergeant Morin, about his

---

[1] Thyng asserts, supported by the affidavit of Christopher Kench, Director of Security and Training at the prison, that prison records do not have a request slip filed by Gebo on September 3, 2009. Gebo's inmate request slips that Kench found do not refer to Thyng. The absence of Gebo's request slip is not determinative when Gebo supports his assertion that he submitted request slips and his assertion is supported by affidavits. See Maraglia v. Maloney, 499 F. Supp. 2d 93, 96 (D. Mass. 2007).

situation, and she told Gebo that she would call Thyng. Gebo states that he raised the issue again at his classification review which was held on September 17, 2009, but was told that protective custody was not an issue for their consideration.[2] His classification remained the same. Gebo talked with Morin again who suggested he contact another officer, who Gebo believes was Sergeant McFarland. Gebo asked McFarland for a grievance form but was told that he had to wait for a response from his request slip.

Gebo states that at the beginning of October he complained to Morin about being in general population. Morin told Gebo to write his complaints in a statement, and then she escorted him to administrative segregation, where he stayed over night.[3] When officers tried to take him back to general population the next day, Gebo refused to move, saying that he could not stay in general population because of threats to his safety. Gebo was written up for a minor disciplinary offense, and he pleaded guilty. When officers returned to move him, Gebo again refused

---

[2]Again, it is not apparent from the current record why this information would not have been passed along to the appropriate prison officials, even if it were not a matter for classification review.

[3]The only form in Gebo's file for October is a request slip dated October 2, 2009, asking to sign up for an education program.

to move and was written up for a major disciplinary offense and transferred to the secure housing unit.  Gebo remained in the secure housing unit during November.

Prison officials found several request slips that Gebo filed in November and December.[4]  On November 3, he submitted a request slip asking to have his property brought to him.  On November 12, he submitted a request slip asking for permission to use a telephone in another area because the telephone available to him was broken.  On November 22, Gebo submitted a request slip asking the director of classifications if he could be transferred to another state.  On November 27, he asked to speak with the unit manager, identified as Craig Thyng, apparently about getting property returned to him from another unit.  On December 6, Gebo wrote to the director of classifications, saying that it was "imperative" that he talk to her about his classification status. He stated that he had been assaulted twice, that he could not be returned to general population because of the gangs, and that the secure housing unit was not supposed to be used as a form of protective custody.  He asked to be transferred to a county jail.

A little over two months after the assaults occurred, on December 8, 2009, a protection review board was held to consider

---

[4]Gebo's file also has request slips submitted by him during 2010.

Gebo's classification, and the board recommended that Gebo be put in protective custody. The classification was approved on December 10, 2009, with the notation that Gebo would remain in the secure housing unit pending an out of state transfer. Gebo was eventually transferred to Merrimack County House of Corrections and later to the prison in Concord where he is being held in protective custody.

Gebo, proceeding pro se and in forma pauperis, filed a complaint alleging claims under § 1983. On preliminary review, the magistrate judge recommended dismissal of Gebo's Fourteenth Amendment claim and ordered service on Robert Thyng of Gebo's Eighth Amendment claim. Gebo moved for appointment of counsel, which was granted on the condition that an attorney would accept the case on a pro bono basis. An attorney entered an appearance on Gebo's behalf and filed an amended complaint, alleging that Thyng violated Gebo's Eighth Amendment rights by failing to protect him from being assaulted.

C.  Discussion

Thyng moves for summary judgment on the ground that Gebo failed to exhaust available administrative remedies. Gebo objects to summary judgment. Gebo acknowledges that he did not follow the prison's administrative procedures through the entire

process but argues that his failure to do so should be excused because he did not get a response to his September request slips or his oral complaints and because he eventually achieved a favorable outcome.

As provided under the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Section 1997e(a) requires "proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 88 (2006). Proper exhaustion requires a prisoner to complete the grievance process in the manner required by the prison. Jones v. Bock, 549 U.S. 199, 218 (2007).

The New Hampshire Department of Corrections has a three-level grievance procedure. "Grievances and Complaints by Persons under DOC Supervision," PPD 1.16 (May 15, 2007). The first level requires an inmate to submit a request slip to the lowest level staff person with authority to address the issue. A response to a request slip is to be provided to the inmate within fifteen days. The request slip step may be waived only "when the inmate can demonstrate that using the process is likely to result in identifiable risk of harm to their [sic] physical safety or

psychological well-being." Id. IV(A)(4). The second level requires that within thirty days after receiving a response to a request slip, the inmate must submit a grievance form to the warden. The third level is a grievance to the commissioner.

1. Request Slips

In this case, Gebo maintains that he submitted a request slip to Thyng after the first assault, asking for protective custody, and a second request slip after the second assault. Gebo states that he received no response from Thyng and that when he asked McFarland for a grievance form, he was told to wait for a response to the request slip. Thyng contends that no such request slips have been found in the prison's records and, on that basis, asserts that Gebo failed to exhaust administrative remedies.[5]

There is no dispute that Gebo did not complete the prison's three-step grievance procedure. Based on the summary judgment record, however, there is a factual dispute as to whether Gebo submitted request slips to Thyng about the assaults and

---

[5]Thyng provides no evidence, by affidavit or otherwise, that he did not receive a request slip from Gebo soon after the assault on September 2. Instead, Thyng asserts only that the prison now does not have any record of a request slip filed by Gebo in early September of 2009.

protective custody.[6]  Therefore, if an exception to the exhaustion requirement applies, based on the circumstances in this case, Gebo's § 1983 claim would survive Thyng's motion for summary judgment.

The administrative exhaustion requirement under § 1997e(a) is an affirmative defense.  Jones, 549 U.S. at 212.  The defendant bears the burden of pleading and proving the defense. Id. at 216; Casanova v. Dubois, 304 F.3d 75, 77 n.3 (1st Cir. 2002); Fisher v. Town of Orange, 2012 WL 639461, at *7 (D. Mass. Feb. 24, 2012); Russo v. Honen, 755 F. Supp. 2d 313, 315 (D. Mass. 2010) ("Exhaustion is an affirmative defense, and thus the burden of showing non-exhaustion is on the defendants.").

As an affirmative defense, exhaustion may be subject to equitable considerations such as tolling, estoppel, and waiver. See, e.g., Amador v. Andrews, 655 F.3d 89, 103 (2d Cir. 2011); Casanova, 304 F.3d at 77 n.3 (1st Cir. 2002).  Furthermore, under certain circumstances, misconduct or inaction by prison officials may make administrative remedies unavailable, thereby obviating the exhaustion requirement.  See, e.g., Beaton v. Tennis, 2012 WL 266967, at *2 (3d Cir. Jan. 31, 2012) (unpublished decision); Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); Moore v.

---

[6]There is also evidence that Gebo continued his efforts to be heard.

Bennette, 517 F.3d 717, 725 (4th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 684-85 (7th Cir. 2006).

Taking the facts provided by Gebo as true, Gebo properly submitted a request slip to Thyng on September 3, asking to talk to Thyng about protective custody.[7] Thyng did not respond. Gebo then asked Morin for help, and she referred him to McFarland who told him he could not have a grievance form until Thyng responded to his request slip. Those circumstances may present a situation where prison officials have made the prison's administrative remedies unavailable. See, e.g., Moore, 517 F.3d at 725 ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."); Kaba, 458 F.3d at 684 ("[W]hen prison officials fail to provide inmates with the forms necessary to file an administrative grievance, administrative remedies are not 'available.'"); Braxton v. Ross, 2010 WL 1713614, at *1 (D. Mass. Apr. 27, 2010) ("[A] prison's failure to comply with its own procedures (such as failing to timely respond to a grievance) may excuse a failure to exhaust.").

Thyng's argument that Gebo should have applied for a waiver of the request slip rule does not fit the circumstances. Gebo

---

[7]Gebo also asserts that he submitted a second request slip after the assault that occurred on September 5.

lacked the required basis for requesting a waiver and cannot be faulted for failing to use a procedure for which he did not qualify.[8]  Further, when he asked McFarland for a grievance form, he was told he had to wait for a response, but he was not told to apply for a waiver.

Therefore, a material factual dispute exists as to whether Gebo submitted a request slip or slips in early September and whether prison officials prevented him from exhausting the prison's grievance procedures.

### 2. Favorable Outcome

Gebo also argues that he should be excused from exhausting the prison's grievance procedures because he obtained a favorable outcome when he was granted protective custody status.  He relies on the discussion in Johnson v. Thyng, 369 Fed. Appx. 144, 148-49 (1st Cir. 2010), where the court noted that "[i]f, in fact, there was no pertinent additional relief obtainable through the grievance process, further exhaustion might be excused."  Gebo

---

[8]Waiver of the request slip process is available only to avoid retaliation, "when the inmate can demonstrate that using the process is likely to result in identifiable risk of harm to their [sic] physical safety or psychological well-being." PPD 1.16 IV(A)(4).  In this case, Gebo did file a request slip and did not fear retaliation from Thyng.

acknowledges, however, that the holding in Johnson "cuts against his argument."[9]

Johnson is an unpublished per curiam decision which may be considered for its persuasive value but is not binding precedent. First Circuit Rule 32.1.0(a). The court declines to consider the persuasive value of Johnson, and the Ninth Circuit decision that it cites, in the context of this case.

Here, a factual dispute prevents summary judgment at this stage based on the issue of whether Gebo filed a request slip or slips in early September and whether he was precluded from exhausting his remedies through the prison's grievance procedures. Therefore, it is unnecessary at this juncture to consider whether the fact that he later achieved protective custody status would also excuse Gebo's failure to exhaust administrative remedies.

   3.   Hearing

The summary judgment record leaves factual issues that must be resolved to determine whether Gebo is barred from bringing his § 1983 claim due to the affirmative defense under § 1997e(a). A

---

   [9]The Johnson case involves a claim against the same defendant, Robert Thyng, who is the defendant in this case.

hearing will be scheduled to address the unresolved factual matters.

At the hearing, the court expects the parties to testify and to call witnesses to testify under oath.  If necessary, parties may subpoena witnesses to testify.  To the extent any witness may be incarcerated at the time of the hearing, counsel may seek a writ of habeas corpus ad testificandum.

## Conclusion

For the foregoing reasons, the defendant's motion to strike (document no. 37) is granted in part as provided in this order.

A hearing will be scheduled on the motion for summary judgment (document no. 35).

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

March 21, 2012

cc:  James Spencer Culp, Esquire
     Theodore M. Lothstein, Esquire
     Nancy J. Smith, Esquire