UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


John W. Gebo

    v.                                 Civil No. 11-cv-047-JD
                                        Opinion No. 2012 DNH 183

Robert Thyng


O R D E R

John W. Gebo, an inmate in the New Hampshire State Prison system, brings an action pursuant to 42 U.S.C. § 1983 against Robert Thyng, who was the Unit Manager at the Northern Correctional Facility ("NCF") in New Hampshire when Gebo was an inmate there in September of 2009. Gebo alleges that Thyng violated his Eighth Amendment rights by failing to protect him from assault by other inmates. Thyng moves for summary judgment, on the ground that Gebo cannot prove his claim and alternatively that Thyng is entitled to qualified immunity. Gebo objects.


Standard of Review

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Material facts are "facts that might affect the outcome of the suit under the governing law." Id. at 248. The court considers the undisputed material facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011).

For the purpose of deciding Thyng's motion for summary judgment on exhaustion and after a hearing on that issue, the court made findings of fact pertinent to the 42 U.S.C. § 1997e(a) exhaustion defense. Doc. no. 46 at *3. However, there is a right to a jury trial under the Seventh Amendment for § 1983 claims. See Dillon v. Rogers, 596 F.3d 260, 271 (5th Cir. 2010). Therefore, when facts pertaining to exhaustion are also material to the claim on the merits, factual findings made for the purpose of deciding the exhaustion defense are not considered in deciding the merits of the claim. See Pavey v. Conley, 544 F.3d 739, 741 (7th Cir. 2008) ("[A]ny finding that the judge makes, relating to exhaustion, that might affect the merits may be reexamined by the jury . . . ."). The court considers the record presented for purposes of the pending motion for summary judgment under the Rule 56(a) standard.

Background

In September of 2009, during the events that are the basis for Gebo's claim, the Northern New Hampshire Correctional Facility was overcrowded and understaffed. Thyng was aware that several gangs were operating among the inmates. Gang members preyed on other inmates by assaulting them, forcing them to move out of certain areas of the prison, requiring former gang members to rejoin the gang, and extorting payments or "rent" from inmates. Assaults on inmates by other inmates were common.

The general population area of the prison is divided into units with A through D Units on the first floor and E through H Units on the second floor. Thyng was Unit Manager at the prison. Although there was a rule that inmates were not allowed to move between the floors in the prison, inmates were able to and did go from one floor to the other. At the beginning of September, 2009, Gebo was housed in A Unit, on the first floor.

On September 2, 2009, Gebo was assaulted by other inmates. Gebo believed that at least two of the attackers were gang members who attacked him because he would not join a gang. As a result of the assault, Gebo had a large gash on the back of his head and other injuries that required treatment at Androscoggin Valley Hospital. When he returned to the prison, he was held in

Health Services overnight and was placed on Pending Administrative Review ("PAR") status.

Corporal Timothy Coulombe investigated the incident and interviewed Gebo on the morning of September 3. Coulombe wrote in his report that Gebo said that after mail call on September 2 he had returned to his cell and was hit on the head from behind. The next thing Gebo knew he woke up in pool of blood. Gebo told Coulombe that he did not have problems with anyone in his unit and did not know who would have attacked him. Coulombe responded by asking Gebo why there were five people from A Unit in "the tank" for fighting, and Gebo answered that he did not know why.

The same day, Gebo asked to be assigned to protective custody because he had been attacked by a gang member.[1] Gebo testified at the exhaustion hearing that Sergeant Hammer took his statement about the September 2 incident and told Gebo that he would talk to Thyng. When Hammer returned, he told Gebo to pack his belongings to move to E Unit, on the second floor. Gebo testified that he was petrified at being moved to E Unit and talked to Sergeant Morin, the housing unit officer, who said she would contact Thyng.

---

[1] Thyng points out that Gebo has suggested different circumstances in which he asked for protective custody. The record supports events recited here.

4

Gebo also testified that he wrote a request slip to Thyng asking to meet with Thyng to find out why protective custody had been denied. Another inmate, David Peters, who knew Gebo, saw him on the second floor and asked Gebo why he was up there. Gebo told Peters about the assault and showed him the request slip for Thyng. Peters saw Gebo put the request slip into the box. Gebo also testified that he spoke to Morin about his situation and tried to contact Thyng by asking at the "bubble" to meet with him.[2]

On September 5, 2009, Gebo was assaulted by inmates in E Unit. Gebo contends that he was attacked by gang members who threw boiling water on him and hit him with a lock.[3] Gebo did not report the attack, but his injuries were noticed by corrections staff. Gebo was taken to Androscoggin Valley Hospital for treatment of burns, lacerations, and bruising. After his return to the prison, Gebo spent several days in Health Services but was then returned to general population, this time

---

[2] It is not entirely clear when Gebo spoke to Morin or when he asked at the "bubble" to speak with Thyng.

[3] Thyng argues that Gebo was accidentally burned by spilled coffee during a fight between gang members and another inmate and that he was not targeted by the gang members in the September 5 incident. Thyng also states, however, that the incident occurred when gang members tried to force some inmates out of the unit so that other gang members could move in and that Gebo fought with the gang members rather than move.

to F Unit.  Gebo states that gang members threatened him an charged him rent in F Unit.  He was not assaulted again.

At a classification review on September 17, 2009, Gebo asked for placement in protective custody but the board members told him they were only conducting a scheduled classification review. Gebo's classification remained the same and he remained in general population.  In October, he told Morin that he could not live in F Unit anymore.  He was taken to the "tank" and when he refused to move back to general population, he was transferred to the Secure Housing Unit at the prison in Concord.  On December 8, 2009, a protection review board considered Gebo's classification and recommended that he be moved to protective custody and he remains in protective custody.

## Discussion

Gebo contends that Thyng violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to put him in protective custody after the September 2, 2009, assault. As a result, Gebo contends, he was assaulted again on September 5.  Thyng moves for summary judgment, arguing that Gebo cannot show that Thyng was deliberately indifferent to a substantial risk of harm and that he is entitled to qualified immunity.

A.  Failure to Protect

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."  Farmer v. Brennan, 511 U.S. 825, 828 & 834 (1994). To succeed on an Eighth Amendment claim, the plaintiff first must show that the risk of harm alleged was "objectively, sufficiently serious."  Burrell v. Hampshire County, 307 F.3d 1, 8 (1st Cir. 2002).  Second, the plaintiff must show that the official "possessed a sufficiently culpable state of mind."  Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 498 (1st Cir. 2011).

   1.  Substantial Risk of Serious Harm

For purposes of the current motion for summary judgment, Thyng focuses exclusively on the issue of deliberate indifference.  Therefore, for purposes of this motion only, the court will assume that the risk of harm was sufficiently serious to meet the constitutional test.

   2.  Deliberate Indifference

Deliberate indifference requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.  That is, the

official must have had "actual knowledge of impending harm, [that was] easily preventable."  Leavitt, 645 F.3d at 498 (internal quotation marks omitted).  Because "[a] prison official's duty under the Eighth Amendment is to ensure reasonable safety," a prison official who knew of a substantial risk of harm is not liable if he "responded reasonably to the risk, even if the harm ultimately was not averted."  Farmer, 511 U.S. at 845 (internal quotation marks omitted).

In this case, Thyng argues that he cannot be shown to have been deliberately indifferent because his decision to move Gebo to E Unit after the September 2 attack was a reasonable response to the risk of harm from other inmates.  Thyng challenges the credibility of Gebo's statements that gang members attacked him and that Gebo notified Thyng that he needed protective custody because of the September 2 incident.  Thyng argues, relying on Burrell, 307 F.3d at 8-9, and Lewis v. Richards, 107 F.3d 549 (7th Cir. 1997), that he had conflicting information about the risk of harm to Gebo following the September 2 attack and that his decision to move him to E Unit was reasonable.

In Burrell, the plaintiff was a pretrial detainee who was assaulted and injured by a fellow pretrial detainee, after Burrell and his wife complained about problems with that detainee.  307 F.3d at 4-7.  He brought suit, contending that the

prison officials were deliberately indifferent to a risk to his health and safety. <u>Id.</u> at 7. The court concluded, however, that the officials "acted reasonably in not providing additional protection for Burrell because they knew he was highly trained in self defense and martial arts, neither Burrell nor his wife requested protective custody, no history existed of violence between Burrell and the inmate who attacked him, and the officials believed Burrell could and would protect himself." <u>Mosher v. Nelson</u>, 589 F.3d 488, 494 (1st Cir. 2009).

Here, there is no evidence that Gebo could protect himself or that Thyng expected Gebo to protect himself. Before the September 5 attack occurred, Thyng knew that Gebo had been attacked on September 2 on A Unit, allegedly by gang members, which required him to have hospital treatment, and that Gebo had requested protective custody.[4] In addition, Thyng was aware of gang activity in the prison, knew that assaults by inmates on other inmates were common, and knew that despite rules to the contrary inmates moved from floor to floor and throughout the general population area of the prison. Therefore, the reasoning in <u>Burrell</u> does not support summary judgment here.

---

[4]Although Thyng disputes Gebo's version of events, Gebo's properly supported statements are taken as true for purposes of summary judgment.

9

In Lewis, the Seventh Circuit construed deliberate indifference in the context of prison officials' failure to protect an inmate to require proof that the prison officials "'effectively condone[d] the attack by allowing it to happen.'" Santiago v. Walls, 599 F.3d 749, 756 (7th Cir. 2010) (quoting Lewis, 107 F.3d at 553). Thyng cites no First Circuit cases that have adopted that standard for showing deliberate indifference. Instead, "the plaintiff must show that the officials had knowledge of acts from which the official[s] can draw the inference that a substantial risk of serious harm exists" but need not show that prison officials "were aware of the risk of a specific harm." Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007).

The plaintiff in Lewis was attacked, raped, and beaten by alleged gang members in three separate incidents while in prison. Lewis, 107 F.3d at 551-53. After the first attack, Lewis reported that a gang had targeted him and asked for protective custody. Id. at 553. In response, prison officials transferred Lewis to a different area of the prison where he lived without incident for five months. Id. at 553-54. Lewis did not report threats from gang members before the second attack. Id. at 554. The court concluded that Lewis failed to provide evidence that he was attacked by gang members in the second incident or that gang

violence was rampant in the prison which would show that the officials were deliberately indifferent to a substantial risk of harm. Id. at 554-55. Lewis's claim based on the third attack failed under Heck v. Humphrey, 512 U.S. 477 (1994), because of a prison disciplinary decision against him as to that incident. Id. at 555.

Lewis is neither governing nor persuasive here. Gebo contends that he notified Thyng that he was being targeted by gang members and asked for protective custody.[5] It is undisputed that violence and gang activity were rampant in the prison in September of 2009 and that Thyng was aware of those conditions. Thyng also knew that inmates were able to move to all general population areas of the prison so that Gebo was not protected in E Unit from inmates who were housed in A Unit. To the extent the facts underlying Gebo's version of events are disputed, those matters cannot be resolved on summary judgment. Given the record presented, the court cannot conclude as a matter of law that Thyng acted reasonably in moving Gebo to E Unit after the September 2 attack.

---

[5] While an inmate's request for protective custody, standing alone, would not prove deliberate indifference, the facts in this case go beyond an isolated request.

11

B.  Qualified Immunity

"The qualified immunity analysis asks whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right and whether the right was clearly established at the time of the violation."  Asociacion de Peiodistas de P.R. v. Mueller, 680 F.3d 70, 80 (1st Cir. 2012). Qualified immunity is an affirmative defense, putting the burden of proof on the defendant asserting the defense.  DiMarco-Zappa v. Cabanillas, 238 F.3d 25, 35 (1st Cir. 2001).

As discussed above, Gebo has made out a violation of his Eighth Amendment right to be free of cruel and unusual punishment.  In 2009, it was clearly established that a prison official may be liable for deliberate indifference to an inmate's Eighth Amendment right to protection against a substantial risk of harm from assault by other inmates.  Farmer, 511 U.S. at 828 & 834; see also Ortiz v. Jordan, 131 S. Ct. 884, 892-93 (2011).  "A right is clearly established if it would be plain to a reasonable officer that his conduct was unlawful in the particular factual context that he faced."  Mueller, 680 F.3d at 80-81.  "Clearly established law does not depend on identical circumstances repeating themselves.  Instead, notable factual differences may exist between prior cases and the circumstances at hand as long as the state of the law at the time gave the defendant 'fair

warning' that his action or inaction was unconstitutional." Mosher, 589 F.3d at 493.

Thyng contends that because of the conflicting information provided by Gebo about who attacked him and the circumstances of the attack on September 2, he would not have known that moving Gebo to E Unit would violate his Eighth Amendment rights.  In other words, Thyng argues that a reasonable officer in his position would not have known that Gebo would be at substantial risk of being attacked again in E Unit.  In support, Thyng relies on Norman v. Schuetzle, 585 F.3d 1097, 1106-07 (8th Cir. 2009).[6]

In Norman, the Eighth Circuit held that a prison case worker, Schwehr, was entitled to qualified immunity for an attack by one inmate on another, although another case worker had told Schwehr that the attacker had joked about fighting with the victim and the attacker talked to Schwehr about letting the victim out of cell confinement.  Id.  The court concluded that although Schwehr's failure to take additional security measures may have been poor judgment, his actions did not show deliberate indifference to a known risk.  Id. at 1107.  Based on that determination, the court concluded that the plaintiff had not

---

[6]The Eighth Circuit has held that Norman was partially overruled by Pearson v. Callahan, 555 U.S. 223 (2009).  Shekleton v. Eichenberger, 677 F.3d 361, 366-67 (8th Cir. 2012).

shown a constitutional violation, which is the first step of the qualified immunity analysis.

Here, for purposes of summary judgment, if the disputed facts are taken in favor of Gebo, he has made out an Eighth Amendment violation for purposes of the first step of the qualified immunity analysis. Although Thyng argues that his action was reasonable because Gebo told one investigator that he did not know who attacked him, Gebo asserts that he told another investigator, Sergeant Hammer, that he was attacked by at least two known gang members. Gebo also asserts that he asked for protective custody on that basis and that Hammer discussed Gebo's concerns with Thyng. In response Thyng assigned Gebo to E Unit, although Thyng was aware that gangs were operating in the prison, that gang violence was common, and that inmates could move between floors and among the units within the general population area of the prison.

Because of the factual disputes about the circumstances of the attack and what Thyng knew when he refused to put Gebo into protective custody, Thyng has not shown that he is entitled to qualified immunity.

## Conclusion

For the foregoing reasons, the defendant's motion for summary judgment (document no. 50) is denied.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

October 11, 2012

cc:  James Spencer Culp, Esquire
     Theodore M. Lothstein, Esquire
     Nancy J. Smith, Esquire